PRATT, J.
This action was brought to recover damages for personal injuries, resulting from a collision between a cab in which the plaintiff was riding a*id one of the defendant’s cable cars, on th'e 28th of April, 1895, at about 8 o’clock p. m., at Ninety-seventh street and Third avenue, New York city. The plaintiff was sixty-mine years of age. In the afternoon of that day she asked her son *700 Patrióle to get a team and cab, and take her and her daughter-in-law to West Farms, to visit a niece. Patrick owned a pair o£ horses, and obtained a cab, and took in his mother and sister-in-law, and his brother, Mathew Weldon, rode upon the seat with Patrick, and they went to West Farms. On returning in the evening, Patrick drove down Third avenue in the rear of one of the defendant’s cars with a trailer attached. How near he drove to the trailer car is one of the disputed questions of fact, but it is conceded that, when he had driven down to Ninety-seventh street he turned out to the left, and attempted to cross the uptown track, upon which a car was approaching. How near to Ninety-seventh street the car was at that time is another disputed question of fact. The plaintiff claims it was from 125 to 160 feet away from the cab, and defendant claims it was only from eight to thirty feet away. When the cab had nearly cleared the uptown track, the car struck the hind wheel, and swung the cab around, brealcing the windows and lanterns, and otherwise injuring it, and throwing the plaintiff across the cab,'and bruising her severely, so that, as she claims, she became permanently injured. The jury returned a verdict for the plaintiff of $3,500, and the defendant thereupon made a motion upon the judge’s minutes to set aside the vprdict, and for a new trial, upon various grounds, which was denied.. This motion, as well as the judgment, is brought up for review.
One of the main questions upon the trial was as to the relations of the plaintiff with Patrick Weldon, the driver. The defendant insisted that the judge should take this question from the jury, and should charge “ that the driver was the agent of the plaintiff, and was so shown to be by the testimony of the plaintiff herself,” and to “make her liable for his negligence.” This was refused.
The judge had already charged the jury as follows:
“ The mother who brings this suit was in the carriage. She was not driving. So I am not able to say to you that the negligence of the driver wo.uld be her negligence. On the contrary, you may not attribute the negligence of the driver to her, 'unless she was associated with him, or directed him in what he was doing. It is only her negligence that you may attribute to her on the question of whether she was negligent.”
We think this charge was as favorable to the defendant as the facts warranted. The jury were told that, if they found he was under her direction in what he was doing, or she was associated with him, in that case his negligence might be imputed to her. But it appears that the sons, or Patrick, took entire control of the journey. He says, in his testimony: “We went to get the old lady’s picture taken. She was a little superstitious about it, and we took her off to her unbeknowns, for that purpose,”—which negatives the claim that she was giving directions at the time of the accident. If the charge rendered it necessary for us to pass upon the question, we are of the opinion that the case falls unden that line of cases where a person accepts a gratuitous ride, and where the plaintiff had no control of the vehicle or the driver,! and no authority to give directions for their movements. Hennessy v. B. C. Railroad Co., 73 Hun, 569; 56 St. Rep. 131; *701 affirmed by court of appeals, November, 1895; Hoag v. N. Y. C. & H. R. Railroad Co., 111 N. Y. 199; 19 St. Rep. 80; Brickell v. N. Y. C. & H. R. Railroad Co., 120 N. Y. 290; 30 St. Rep. 932.
The defendant asked the court to charge that “if the jury find, as a fact, that the defendant’s witnesses are entitled to be believed -equally with the plaintiff’s, then the defendant is entitled to a verdict,” which was refused, and excepted to. This ruling was correct. That is not the test to be applied to a case when the evidence is in. In that connection the court did charge “ that the jury are not bound to believe the testimony of the plaintiff, even though it was- not contradicted or impeached,” and also charged u that if the weight of testimony was even to give the benefit to the defendant. ” He further charged that the burden of proof was upon the plaintiff, and the plaintiff must establish her case by a fair preponderance of evidence, and also that, if the testimony on behalf of the plaintiff and on behalf of the defendant is equally balanced, then the plaintiff cannot recover. He also charged: “ If either the conclusion of the defendant’s negligence, or the absence of negligence on the part of the defendant, may with equal fairness be drawn, then the defendant is entitled to a verdict.” He also charged “ that the gripman of the car had a right to assume that the driver would use ordinary diligence, and that, if in á place of safety, he would not take chances in passing before an approaching car, and encountering great risks.” These instructions were as favorable to the defendant as the facts warranted.
Defendant also requested the court to charge that; "if Weldon saw the approaching car, and attempted to cross the track in front „of it, and erred in judgment as to the chances of doing so safely, then plaintiff cannot recover.” This was refused.' This is consistent with the previous ruling, where the court refused to hold, and to decide as a matter of fact, that Weldon was the agent of the plaintiff, and his negligence should be imputed to her. If Weldon had been the plaintiff, that charge would have been correct; but as to the plaintiff it was not true, and the ruling was consistent with the judge’s previous ruling. And the same remark is applicable to the next request (No. 12) of the defendant, and also the fifteenth, sixteenth, and seventeenth. The facts of this case were determined by the jury xipon conflicting evidence. The issue, as to the negligence of the gripman, was clearly and fairly submitted to the jury. The claim o£ the plaintiff was that the gripman was not looking straight ahead, so as- to observe the cab when it first turned to cross the uptown track, and while the gripman used his best endeavor to stop the car when he was apprised by the two Weldons of the danger of a collision, yet the plaintiff claimed, and the jury must have so found, that he was not looking straight ahead, and did not observe the cab as soon as he ought to have done if he had been 'tending properly to his duties. This is the main charge of negligence against the gripman.
The defendant also excepted to the judge’s refusal to charge that, “ if Weldon saw the approaching car, and attempted to cross the track in front of it, and erred in judgment as to the chances *702 of doing so safely, then plaintiff cannot recover.” We have already answered this exception' by saying that that would have been the law had Patrick Weldon been the plaintiff in the case, but the defendant urges that this was material and proper in another view, to wit, that this was an inevitable accident, for which the gripman was not in fault; that it was purely a misadventure, and therefore that the plaintiff cannot recover, on the ground that an error of judgment is not negligence. But the court was not. asked to charge that, in case the jury found that it was a pure accident, the defendant cannot be held responsible; but the case was presented to the jury upon the testimony as to the distance that the cab was from the car when it first attempted to cross the-street, and the various other circumstances of the case authorized the jury to find that the gripman was negligent in observing the= cab and in failing to stop the car.
We now come to the exception raised by .the defendant for the-reason that the court stopped the cross-examination of the witness-John Conway.' It has always been conceded that the court held the power to control all matters, in the exercise of sound discretion, in the trial of a case. It may be observed, as to this exception, that it appears by no means certain that the defendant was. injured by the court sending the witness from the stand. It appears, beyond all question in the case, by all the witnesses on both sides, that the cab turned to the left, and went towards the east, across the uptown track of defendant’s road. The examination had been long, and the defendant’s counsel says that the witness was confused. He made a mistake in the points of the compass, but it was upon a point upon which there was really no dispute in t the case, and the cross-examination seemed calculated, not to elicit, the truth, but to confess the witness. Under these circumstances, we think it was in the discretion of the court to send the witness-from the stand. It also appears that the defendant had the privilege of assuming and continuing the cross-examination at a later-stage of the case. It is to be observed that the witness did not. see the collision, and was not in a position to see it. We think that the act of sending the witness from the 'stand was clearly in the discretion of the trial judge, and that that discretion was not-abused. The whole purpose of examining witnesses is to elicit, the truth, and when a judge sees that a witness is so confused, by a long or irrelevant cross-examination, that his memory seems to have left him, it is a proper exercise of discretion to let the witness rest for a ghort time, in order to collect his thoughts and become composed, so as to continue his examination.
We think the judgment should be affirmed, with costs.
All concur."